FUDGE *v*. THE STATE.

*Fort, Fort & Fort,* for plaintiff in error.

*Ellis G. Arnall, attorney-general, E. L. Forrester, solicitor-general, E. J. Clower* and *C. E. Gregory Jr., assistant attorneys-general,* contra.

BELL, Justice. Jim Fudge was jointly indicted with Charlie Lucius Holcomb and Johnnie ·Lee Harris, for murder in the alleged killing of J. T. Johnson. Fudge was tried separately, found guilty, and sentenced to electrocution. His motion for new trial was based upon the general grounds, to which several special grounds were added by amendment. It appeared from the evidence that the defendant Jim Fudge and the other persons indicted with him were brothers, or half-brothers. J. T. Johnson, the deceased, was the husband of their sister. A few days before the homicide he had struck his wife with some instrument, and at the time of the killing he and his wife were not living together, she having gone to the home of her mother. A warrant had been issued against him for wife-beating, and his employer had promised to make bond for him. He lived on the farm of one Isler. Jim Fudge and the codefendants lived at different places, each several miles away. On the same farm where J. T. Johnson lived was the home of George Scott, where the killing occurred. It was the theory of the State, that these three brothers went to the Isler farm for the purpose of doing harm to J. T. Johnson, because of his mistreatment of their sister; that Jim Fudge and his codefendant Johnnie Lee Harris had gone to this house of George Scott, and were on the back porch, when J. T. Johnson came in at the front door, apparently fleeing from Holcomb, the other defendant; that he was met in the house by Jim Fudge and shot by Fudge with a pistol, and was then beaten by Holcomb with the stock of a shotgun, the barrel of which was later found at the home of the defendants' mother. The theory of the defendant on trial was that all three of the defendants and the deceased, with others, were playing cards for money in the house of George Scott, that the deceased became angered, left, returned with a shotgun, and pointed it at Holcomb, who grabbed it, and that in the scuffle the deceased and Holcomb were shoved

out on the front porch, but immediately afterwards Johnson came back inside with the shotgun and pointed it at Jim Fudge, who then shot him with the pistol. Both sides introduced evidence, and there was some evidence to support each of these theories. The defendant made a statement in which he claimed that he shot the deceased in self-defense, stating that he would not have shot him except to protect himself. The grounds of the motion for new trial are sufficiently indicated in the following opinion.

■ The mere fact that the name of one of the jurors who convicted the accused was not on the jury-list is not cause for a new trial, when the point is raised for the first time after verdict. *Embry* v. *State,* 138 *Ga.* 464 (75 S. E. 604). Where the name of the juror was actually in the *jury-box* and was drawn therefrom, even if the omission of such name from the *jury-list* might be considered as ground of objection propter defectum (but see Code, § 59-109; *Washington* v. *State,* 122 *Ga.* 735, 50 S. E. 920; *Crawford* v. *State,* 81 *Ga.* 708, 8 S. E. 445; *Faulkner* v. *Snead,* 122 *Ga.* 28 (3), 49 S. E. 747), it would not be cause for a new trial unless discovered and urged before verdict. *Jordan* v. *State,* 119 *Ga.* 443 (46 S. E. 679); *Taylor* v. *Warren,* 175 *Ga.* 800 (3) (166 S. E. 225); *Wright* v. *Davis,* 184 *Ga.* 846, 851 (193 S. E. 757); *Jones* v. *State,* 148 *Ga.* 582 (3) (97 S. E. 621).

The averments in the motion for new trial that the accused was not arraigned and did not waive arraignment, which appear to have been made only for the purpose of showing that he was "deprived of his right to challenge the array and thus purge the panel of the illegal juror," were ineffectual for such purpose, since the objection related to an individual juror and should have been raised by a challenge to the poll, and not to the array. Code, § 59-803; *Taylor* v. *State,* 121 *Ga.* 348 (49 S. E. 303); *Bryan* v. *State,* 124 *Ga.* 79 (52 S. E. 298).

■ "One who is not an expert or a practicing physician may, after describing the wound, give his opinion that it caused death." *Everett* v. *State,* 62 *Ga.* 65 (3); *McLain* v. *State,* 71 *Ga.* 279 (4); *Taylor* v. *State,* 135 *Ga.* 622 (6) (70 S. E. 237); *Lanier* v. *State,* 141 *Ga.* 17 (3) (80 S. E. 5); *Tanner* v. *State,* 163 *Ga.* 121 (7) (135 S. E. 917). On this point the present case differs materially on its facts from *Harris* v. *State,* 188 *Ga.* 745 (4 S. E. 2d, 651). The court did not err in admitting the evidence to which objection was taken.

■ The judge charged the jury that the defendant "through his counsel" made certain contentions, stated in the charge, as to the circumstances of the homicide; that the defendant "contends after that occurred . . the deceased made an attack upon this defendant," who then shot the deceased "to save his own life . . , and that under these contentions" the defendant was justifiable. This charge was assigned as error, on the ground that in using the phrase "through his counsel" the judge minimized the credit to be given to the defendant's evidence, and intimated that the contention was not supported by any evidence or by any circumstances except "through his counsel." It was not averred in the motion that the statement of the judge was incorrect. But regardless of this, the charge in question was immediately followed by an instruction that "These contentions·raise issues of fact" to be determined by the jury from the evidence and the statement of the defendant; and still later the court charged, without reference to counsel, "The defendant here and now on trial contends that whatever act he did on that occasion was justifiable." The excerpt complained of was not cause for a new trial. *Smith* v. *State,* 175 *Ga.* 361 (165 S. E. 231)·; *Lee* v. *State,* 179 *Ga.* 766 (177 S. E. 555) ; *Wafford* v. *State,* 163 *Ga.* 304 (3) (136 S. E. 49) ; *Autrey* v. *State,* 24 *Ga. App.* 414 (2) (100 S. E. 782).

■ The judge charged the jury as follows: "Whether the circumstances were such as to excite the fears of a reasonable man that a felony was about to be committed upon him, and that it was necessary to kill the other party in order to prevent it, is a question to be determined by the jury in the light of their own judgment and experience, after hearing all the facts and circumstances attending the homicide." This charge was assigned as error, on the ground that it limited the jury "to their own judgment and experience," and prevented them from considering "what an ordinary reasonable and prudent man would do under the circumstances." The standard of a reasonable man, by which the conduct of a particular person under given circumstances is to be judged, is one which the jury must determine from their own observation and their common knowledge and experience. The charge in question was in accord with this rule, and was not erroneous as contended. *Broyles* v. *Prisock,* 97 *Ga.* 643 (6) (25 S. E. 389) ; *Mayor &c. of Americus* v. *Johnson,* 2 *Ga. App.* 378 (3) (58 S. E. 518).

■ The present defendant and two other persons, his brothers, were jointly indicted for the homicide. There was some evidence to show that the person killed made a felonious assault upon a brother of the defendant immediately before he was shot by the defendant. Error is assigned on the failure of the judge to give in charge Code § 26-1015, that "Parents and children may mutually protect each other, and justify the defense of the person or reputation of each other." The judge charged the law of justifiable homicide in self-defense, as stated in § 26-1011, and continued by instructing the jury that the law "further provides, under that principle of justifiable homicide, that all other instances which stand upon the same footing of reason and justice to which I have just called your attention shall be justifiable homicide." The defendant in his statement made no contention that he shot the deceased in defense of his brother, stating only that after his brother had been "shoved" out of the house the deceased came "back inside" and pointed a gun at the defendant, whereupon the defendant whirled and "shot him;" and that he (the defendant) "would not have shot him except in self-defense." There was no relation of parent and child in this case, and even if a charge on the right of parent and child to defend each other would have been relevant in illustrating "other instances which stand upon the same footing of reason and justice." (Code, § 26-1016), it was at most only collaterally involved, and the failure so to charge was not erroneous in the absence of a proper and timely request. *Darden* v. *State,* 171 *Ga.* 160 (155 S. E. 38) ; *Johnson* v. *State,* 188 *Ga.* 771 (7), 775 (4 S. E. 2d, 639) ; *Bishop* v. *Georgia National Bank,* 13 *Ga. App.* 38 (4) (78 S. E. 947).

■ Whether or not the evidence demanded a finding that the deceased died as a result of being shot by the present defendant, or would have authorized an inference that he died of a wound inflicted with a "blunt instrument" by a codefendant, it showed conclusively and without dispute that he died as a result of one or both of the wounds so inflicted. In these circumstances, the defendant on trial under such joint indictment could not properly have been convicted of the offense of assault with intent to murder; and consequently the judge did not err in failing to charge the jury in regard to that offense. *Smith* v. *State,* 127 *Ga.* 262 (56 S. E. 360) ; *Felder* v. *State,* 135 *Ga.* 220 (69 S. E. 106) ;

*Walker* v. *State,* 136 *Ga.* 126 (2) (70 S. E. 1016); *Stuckey* v. *State,* 176 *Ga.* 252 (167 S. E. 519).

█ In the absence of a proper request, the judge did not err in failing to charge regarding the turbulent or violent character of the deceased. *Tillman* v. *State,* 136 *Ga.* 59 (70 S. E. 876); *Lightfoot* v. *State,* 160 *Ga.* 512 (3) (128 S. E. 743); *Moon* v. *State,* 22 *Ga. App.* 617 (2) (97 S. E. 81).

█ The evidence authorized the verdict that the accused was guilty of murder. The court did not err in refusing a new trial.

Judgment affirmed. All the Justices concur.